In the
United States District Court
for the District of Columbia

Banafshe Alavi
18403 Mayapple Court
Gaithersburg MD 20879,
    Plaintiff,

v.                                                Civil Action No.
                                                 **Jury Trial Demanded**

Jeffrey Shell, Chair
Broadcasting Board of Governors
330 Independence Ave., SW
Washington, DC 20237,
    Defendant.

**COMPLAINT**

This is an action for damages, reinstatement and other equitable relief for sex discrimination and retaliation / reprisal for opposition to discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII").

**Parties**

1. Plaintiff, Banafshe Alavi, a female, was a contractor and later employee at the Broadcasting Board of Governors ("BBG"). Plaintiff is a fluent speaker of Farsi, the language spoken in Iran.

2. The Defendant, Jeffrey Shell is the Chair of the Broadcasting Board of Governors, a federal agency that includes a number of activities that prepare and produce broadcasts to foreign countries in foreign languages, most notably the Voice of America. He is sued in his official capacity.

**Jurisdiction, Venue, Exhaustion**

3. This court has jurisdiction over complaints of discrimination, retaliation and reprisal under 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

4. Venue is properly lodged with this Court inasmuch as the matters complained of took place in the District of Columbia.

5. Plaintiff duly filed a timely administrative complaint of discrimination with the agency complaining of harassment and retaliation. An agency investigation was undertaken and Plaintiff requested a hearing. A hearing was held on her complaint before an administrative judge from the Equal Employment Opportunity Commission who made the findings of sexual harassment, reprisal and retaliation for the period from October 2006 to the end of February 2007. That finding was upheld by the EEOC Office of Federal Operations on appeal in a decision dated September 11, 2015 and is now final. In this action, Plaintiff does not challenge the finding of sexual harassment and retaliation against her or the related award of damages for the period from October 2006 to the end of February 2007.

6. Plaintiff files this action within 90 days of her receipt of the EEOC decision. Plaintiff has properly initiated and timely exhausted her administrative remedies.

**Background**

7. Plaintiff was employed as a contractor at BBG from 1996 to 2006. From 2002 to April 2006 the work Plaintiff performed as a contractor was precisely the same as that assigned to her after her hire into the federal service as a GS 12 television production specialist.

8. In early 2006 Plaintiff applied for and was selected for a position in the federal service as a GS 12 television production specialist at 330 Independence Ave. in Washington, DC.

9.  Plaintiff entered on duty is a GS 12 television production specialist at the agencies Voice of America Persian service on or about April 16, 2006. Her primary duties included producing and assisting in the production of TV shows in Farsi for broadcasting to Iran. As such, during a TV broadcast, she would be in a soundproof booth coordinating the integration of technical portion of the various TV productions [music, video, call in connections, interviews] with the announcer's narrative. Because much of the dialogue and inquiry was conducted in Farsi, her Farsi language skills were especially valuable.

10. In her position as a GS 12 television production specialist, Plaintiff was covered by a collective bargaining agreement between the agency and the AFGE Local 1812 which governed the certain terms and conditions of her employment.

11. Her supervisor, Dominic Bellone, a male, sexually harassed Plaintiff and retaliated against her for protected EEO activity seeking relief from the harassment. The harassment affected a term, condition or privilege of Plaintiff's employment at BBG and had the purpose of or effect of unreasonably interfering with the work environment and/or created an intimidating and/or hostile or offensive environment over a period from November 2006 to the end of February 2007. That pattern of harassment included yelling at her, berating her, humiliating her, and demeaning and embarrassing her in front of other employees. The harassment was severe, pervasive, public and patterned and frequent and very humiliating. Mr. Bellone upon seeing that he had succeeded in antagonizing Plaintiff would make a public show of his evident satisfaction at having inflicted suffering on Plaintiff.

12. Agency officials knew or should have known of the harassment and failed to take prompt remedial action. Plaintiff complained to the executive director and the chief of the Persian service about this mistreatment.

13. Plaintiff was supervised by Mr. Bellone from April 2006 to March 1, 2007.

14. The pattern of harassment and intimidation continued until Plaintiff's termination and took a great toll on Plaintiff physically and emotionally. She was stressed and humiliated. She had trouble sleeping. She suffered migraines. She cried in the office and at home.

15. On or about February 5, 2007 a group of female employees met with agency supervisors and managers to complain about office harassment by males and Mr. Bellone in particular. Plaintiff was an organizer of this meeting and an outspoken speaker at the meeting. Plaintiff's speaking at this meeting constituted protected activity in opposition to sex discrimination and harassment.

16. BBG has engaged in a pattern of retaliation against individuals who complain of illegal discrimination.

17. In early 2007 Mr. Bellone began addressing Plaintiff with threatening references to the approach of the end of her one year probationary period -- a time when she could be terminated by the agency for no procedural process.

18. Mr. Bellone began searching for a pretext to terminate Plaintiff.

19. Mr. Bellone scrutinized her hours and her leave to find a pretext to terminate her. He unduly scrutinized her requests for sick leave and tried to challenge her need for leave.

20. Because of that undue scrutiny and Mr. Bellone's reluctance to approve sick leave Plaintiff was reluctant to take leave. Consequently, her anxiety and her symptoms increased.

21. Plaintiff's arrival time had been set as 10 AM daily since at least 2003 to match up with the program timing. The established 10 AM arrival reflected the fact that a producer would begin with review of scripts and agendas for each day's production produced earlier in the day by other employees.

22. At a meeting on March 1, 2007, attended by Mr. Bellone, Mr. Jonas Keeling and Plaintiff, Mr. Jonas Keeling took over administrative supervisory responsibilities for Mr. Bellone.

23. At that meeting, Mr. Jonas Keeling adopted Mr. Bellone's asserted claim that Plaintiff had been insubordinate with respect to him and required special administrative attention. Mr. Jonas Keeling reset her work schedule moving up her arrival time to 6:45 AM Monday through Friday. There was no work- related basis for this change.

24. At the same time, Plaintiff was reassigned to a new project startup a new program for a Farsi audience entitled the History Channel. In that activity she was to be supervised by Scott Riddlesburger, a male.

25. On March 16, 2007, Mr. Jonas Keeling made a request for computerized building security records relating to Plaintiff for the month of March 2007. There was no basis for review of these building entry records; rather, it was a continuation of the search for a pretext to discriminate and retaliate against Plaintiff.

26. Those building security records are not time and attendance records. They were not maintained for all hours of the day and not all building entries by employees were necessarily accompanied by swipe records. Recordation of the actual swipe at as an employee entered was not monitored so an entry associated with incomplete swipe would not be recorded.

27. The building security entry system was not connected to the internet. Therefore, the internal timeclock on the computer was not automatically confirmed to be accurate. Indeed, there were manifest inaccuracies in the computer system in March and April 2007. The agency thereafter made moves to repair or improve the system to improve the accuracy of the building security entry records.

28. No notice of the request for building security entry system data relating to Plaintiff was provided to Plaintiff.

29. Mr. Jonas Keeling ordered the office timekeeper to make retroactive changes to Plaintiff's leave records and instructed the timekeeper not to discuss the changes with Plaintiff. Thus, retroactive changes were made to Plaintiff's time and attendance without consultation or the knowledge of Plaintiff.

30. Plaintiff was terminated on or about March 6, 2007. The decision was based on intentional discrimination and reprisal. The claimed basis for the action was pretextual.

31. Plaintiff's supervisor Scott Riddlesburger affirmed that Plaintiff's performance was good. He also stated that her work ethic was good. Mr. Riddlesburger was not consulted in connection with the decision to terminate Plaintiff in April 2007.

32. The substance and procedure leading to the decision to terminate plaintiff violated the law, rules, and custom applicable to agency employees including the AFGE Local 1812 collective bargaining agreement with the agency.

COUNT ONE – SEX DISCRIMINATION

33. Each and every allegation of paragraphs nos. 1 to 32 is incorporated by reference herein.

34. The decision to terminate Plaintiff's employment on or about April 6, 2007 was based on intentional sex discrimination in violation of Title VII.

35. Defendant's actions have caused plaintiff to suffer physical and emotional distress entitling her to compensatory damages as well as make whole relief.

COUNT TWO – REPRISAL AND RETAILATION

36. Each and every allegation of paragraphs nos. 1 to 32 is incorporated by reference herein.

37. The decision to terminate Plaintiff's employment on or about April 6, 2007 was based on intentional retaliation and / or reprisal for her prior protected EEO activity in violation of Title VII.

38. Defendant's actions have caused Plaintiff to suffer physical and emotional distress entitling her to compensatory damages as well as make whole relief.

**Prayer for relief.** Wherefore, Plaintiff for relief requests:
  i. back pay from and after her termination on April 6, 2007 through the date when Plaintiff is reinstated in an equivalent position at the agency together with interest thereon; and front pay as appropriate;
  ii. reinstatement to the same or equivalent position at the agency;
  iii. compensatory damages for the emotional and physical pain, suffering, anxiety and other injury she suffered to the maximum allowed by law;
  iv. complete make whole relief in terms of retroactive promotions, leave, and fringe benefits;
  v. assurances of nondiscrimination in the future;
  vi. costs and attorney's fees of this action and all prior actions to enforce the rights asserted here; and

      vii.    such further relief both equitable and legal which justice may require.

**Jury Trial.** Plaintiff respectfully requests a jury trial on all issues of fact.

                                               Respectfully submitted,

                                               /s/

                                             Timothy B. Shea
                                             DC Bar no. 234005
                                             Nemirow, Hu & Shea
                                             1900 L Street, NW Suite 303
                                             Washington, DC 20036
                                             Tel. 202 835 0300
                                             Fax 888 – 522 – 4519
                                             Email:  timbshea@gmail.com

Dated: December 10, 2015