**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BANAFSHE ALAVI,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL RIGAS, in his official capacity as Chief Executive Officer of the U.S. Agency for Global Media[1]<br><br>Defendant. | ) | Civil Action No. 15-2146 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Banafshe Alavi, brought this civil action against the defendant, Michael Rigas, in his official capacity as Chief Executive Officer of the United States Agency for Global Media, asserting claims of gender discrimination and retaliation in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"). See Complaint ("Compl.") ¶¶ 34, 37, ECF No. 1. Currently pending before the Court are the Defendant's Motion for Partial Reconsideration ("Def.'s Mot."), ECF No. 127, of the Court's December 10, 2024 Memorandum Opinion ("Dec. 10, 2024 Mem. Op."), ECF No. 124, and the portion of the Plaintiff's Combined Motion for Additional Relief and Opposition to the Defendant's Motion for Partial Reconsideration ("Pl.'s Com. Mot."), ECF No. 140, that the Court held in abeyance in its September 16, 2026 Order addressing the amount of back pay that the plaintiff is entitled to

[1] Michael Rigas is the current Chief Executive Officer of the United States Agency for Global Media, and he is therefore substituted for Kari Lake Halperin, as the proper party defendant pursuant to Federal Rules of Civil Procedure 25(d).

receive, ECF No. 151. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must deny the defendant's motion for partial reconsideration and grant in part and deny in part the plaintiff's combined motion for additional relief.

## I. Background

The Court outlined the factual background of this case in an earlier Memorandum Opinion issued on October 4, 2018, see Alavi v. Weinstein, No. 15-cv-2146, 2018 WL 4828401, at *1 (D.D.C. Oct. 4, 2018) (Walton, J.), and therefore, will not reiterate those facts again here.

On December 10, 2024, this Court issued a Memorandum Opinion granting in part, denying in part, and holding in abeyance in part, the outstanding components of the Plaintiff's Motion for Award of Equitable Relief, ECF No. 108; and granting in part and denying in part the Plaintiff's First Supplemental Motion for Award of Attorneys' Fees and Costs, ECF No. 120. See Dec. 10, 2024 Mem. Op. at 1. The Court awarded the plaintiff:

> (1) reinstatement at the GS-13 level; (2) a post-hoc modification of her official personnel folder resulting in the removal of all records regarding her April 2007 termination and all records that support, evidence, or reference the termination or the rationale for the termination; (3) fees generated during the administrative litigation of this case and an award of $889,397.93 in attorneys' fees, i.e., a ninety percent award of attorneys' fees for Mr. Shea's services, calculated at the highest 2023 Fitzpatrick Matrix rates; and (4) reasonable costs incurred of $26,746.32 . . . The Court also concludes that it must grant in part and deny in part the plaintiff's supplemental motion for fees and costs. Specifically, the supplemental motion is granted to the extent the plaintiff seeks (1) an [additional] award of $56,796.66 in attorneys' fees, i.e., a ninety percent award of attorneys' fees for Mr. Shea, calculated at the highest 2023 Fitzpatrick Matrix rates; and (2) [additional] reasonable costs of $264.20.

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Combined Reply in Further Support of Partial Motion to Reconsider, Opposition to Plaintiff's Motion to Show Cause, and Opposition to Plaintiff's Motion for Additional Relief ("Def.'s Opp'n"), ECF No. 142, and (2) the Plaintiff's Reply to Defendant's Combined Reply in Further Support of Partial Motion to Reconsider, Opposition to Plaintiff's Motion for Show Cause, and Opposition to Plaintiff's Motion for Additional Relief ("Pl.'s Reply"), ECF No. 144.

Id. at 40–41.

The Court determined that the plaintiff was entitled to back pay because although she did not "consistently exercise reasonable diligence to secure suitable employment, and therefore failed to take reasonable steps to mitigate her damages during the time for which seeks back pay[,]" id. at 18 (internal citations and quotation marks omitted), the defendant "failed to establish that other suitable employment was, in fact, available, and [] therefore failed to carry its burden of proving failure to mitigate[,]" id. at 20. The Court held in abeyance the amount of back pay the plaintiff should receive from her April 2007 termination to the date of her reinstatement, Order at 2 (Dec. 10. 2024), ECF No. 125, pending supplemental briefing from the parties, as the Court at that time "conclude[d] that, based on the current record, it d[id] not have sufficient information to independently calculate the back pay award the plaintiff is entitled to receive[,]" Dec. 10, 2024 Mem. Op. at 21.

On February 14, 2025, the defendant filed its motion for partial reconsideration, requesting that the Court "reconsider the part of its opinion finding that [the plaintiff] is entitled to back pay and modify its December 10, 2024 . . . Order to strike the award of back pay." Def.'s Mot at 10. The defendant argues that the Court's conclusion that the plaintiff is entitled to back pay was in error because the Court mistakenly held that "the Agency was also required to show that alternative employment was available." Id. at 1. Instead, the defendant claims that "the availability of suitable alternative employment is 'irrelevant' where the employee[] fails to seek employment, as [the plaintiff] failed to do so here[,]" citing as authority for its position National Labor Relations Board v. Madison Courier, Inc., 472 F.2d 1307, 1319 (D.C. Cir. 1972). Id. (citing Madison Courier, Inc., 472 F.2d at 1319).

The parties then submitted to this Court a Joint Status Report stating that "the parties have been negotiating to reach a global settlement." Joint Status Report (April 9, 2025) at 1, ECF No. 129. The case was subsequently referred to a magistrate judge for mediation. Order at 1 (April 18, 2025), ECF No. 131. A settlement conference was subsequently conducted, see Minute Entry (June 9, 2025), but a settlement was not ultimately reached by the parties.

Instead, on September 27, 2025, the plaintiff filed her Motion to Show Cause alleging that the defendant has "refused to take any action pursuant to the [Court's] Order." Plaintiff's Motion for an Order to Show Cause at 1, ECF No. 135. Specifically, the plaintiff alleged that the defendant has refused to pay the award of fees and costs, reinstate the plaintiff to the GS-13 position, and provide the plaintiff with a copy of her modified personnel folder as required by the Court's December 10, 2024 Order. Plaintiff's Memorandum in Support of Motion for an Order to Show Cause at 2–4, ECF No. 135-1.

On January 14, 2026, the plaintiff filed her combined motion in which she seeks "additional relief as to back pay through December 31, 2026, the assumed date of a final order in this case[,]" Pl.'s Com. Mot. at 2, as well as opposing the defendant's motion for partial reconsideration, id. at 30. The plaintiff also requested front pay from the defendant "to cover the eventuality that [the] [d]efendant will continue to refuse reinstatement." Memorandum in Support of Pl.'s Com. Mot. at 3, ECF No. 140-1. Furthermore, the plaintiff again sought the award of attorney's fees for Robert J. Patton, id. at 19, as well as an increase in the attorney's fee award to Timothy Shea to reflect the then current 2025 Fitzpatrick Matrix rates, id. at 20.

On September 15, 2026, the Court held a motions hearing regarding the outstanding motions in this case. See Minute Entry (Sept. 15, 2026). After the hearing, the Court issued an Order (1) denying the plaintiff's motion for an order to show cause and (2) granting in part,

denying in part, and holding in abeyance in part, the plaintiff's combined motion requesting additional relief. Order at 1 (Sept. 16, 2026), ECF No. 151. Specifically, the Court granted the plaintiff's motion to the extent that it sought the award of attorney's fees for Mr. Patton, who assisted Mr. Shea before and during the plaintiff's jury trial at the highest rate of the 2023 Fitzpatrick Matrix. Id. The motion was denied to the extent it sought front pay for the plaintiff, in light of her pending reinstatement to the agency on November 2, 2026, as ordered by the Court in the Order. Id. The Order also denied an upward adjustment to the 2025 Fitzpatrick Matrix for the attorney's fees awarded to Mr. Shea. Id. at 2. The Court held in abeyance the portion of the plaintiff's combined motion that addressed the amount of back pay the plaintiff was entitled to receive. Id. Thus, the remaining questions for the Court to resolve in this case are: (1) whether the defendant was required to demonstrate the availability of other suitable employment for the plaintiff in order to meet its burden regarding whether the plaintiff is entitled to back pay and (2) if the plaintiff is entitled to back pay, the amount of back pay the Court should award the plaintiff.

## II. Standards of Review

### a. Motion for Reconsideration

As an initial matter, the Court must first decide the appropriate standard for evaluating the defendant's motion for partial reconsideration. The defendant states that Federal Rule of Civil Procedure 54(b) is the correct standard of review. Def.'s Mot at 2–3. Under Rule 54(b) any order or decision that is not a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." U.S. ex rel. Westrick v. Second

Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (citing Husayn v. Gates, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)).

In determining whether "justice requires" reversal of a prior interlocutory order, courts assess circumstances such as "whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); see Davis v. Joseph J. Magnolia, Inc., 893 F. Supp. 2d 165, 168 (D.D.C. 2012) ("[A] motion for reconsideration is discretionary and should not be granted unless the movant presents either newly discovered evidence or errors of law or fact that need correction."). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." Second Chance Body Armor, Inc., 893 F. Supp. 2d at 268. And, motions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the Court or presenting arguments that should have been raised previously with the Court. See Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011).

However, Rule 54(b) only applies if the Court's December 10, 2024 Memorandum Opinion and accompanying Order, was not in fact a final Order. If it was, then Federal Rule of Civil Procedure 59(e) would instead apply. Rule 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "[twenty-eight] days after the entry of the judgment." Fed. R. Civ. P. 59(e). Under Federal Rule of Civil Procedure Rule 59(e), a party may only seek reconsideration to the extent that "(1) [] there is an intervening change of controlling law; (2) []

new evidence becomes available; or (3) [] the judgment should be amended in order to correct a clear error or prevent manifest injustice." Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018) (internal quotation marks and citation omitted). Because reconsideration under Rule 59(e) is an "extraordinary measure[,]" id. (citation omitted), a clear error must be "dead wrong" and "must strike [a court] as more than just maybe or probably wrong . . . [,]" Brown v. District of Columbia, 795 F. Supp. 3d 103, 111 (D.D.C. 2025) (citing Slate v. Am. Broad. Cos., Inc., 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (alteration in the original)). For reasons indicated below, the Court does not find an error in its December 10, 2024 Memorandum Opinion and therefore, the defendant's motion for partial reconsideration fails under both the Rule 59(e) and the more lenient Rule 54(b) standards.

**b. Equitable Relief Under Title VII**

"[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" Franks v. Bowman Transp. Co., 424 U.S. 747, 763 (1976) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)). Pursuant to Title VII:

> If the court finds that the [defendant] has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). Accordingly, the "[C]ourt [] must strive to grant 'the most complete relief possible' in cases of Title VII violations." Lander v. Lujan, 888 F.2d 153, 156 (D.C. Cir. 1989) (citing Franks, 424 U.S. at 764). The Court's objective must be to "restore the prevailing plaintiff[], as nearly as possible, to the circumstances [she] 'would have occupied if the wrong had not been committed.'" Robinson v. District of Columbia, 341 F. Supp. 3d 97, 105 (D.D.C.

2018) (quoting Lander, 888 F.2d at 156). In this regard, the Court has "considerable discretion[.]" Lander, 888 F.2d at 156.

## III. Analysis

### a. The Defendant's Motion for Partial Reconsideration

The defendant does not allege that there has been a "controlling or significant change in law" or that the Court failed to consider "controlling decisions or data". In Def. of Animals, 543 F. Supp. 2d at 715 (citation omitted). Instead, the defendant claims that the Court has committed an error. Def.'s Mot. at 1. Specifically, the defendant argues that the Court erred in its December 10, 2024 Memorandum Opinion by holding "that the Agency was also required to show that alternative employment was available and that the Agency failed to make that showing." Id. The defendant states that in its December 10, 2024 Memorandum Opinion, the Court "recognized [that] Madison Courier 'appears to support the defendant's argument that it does not have to demonstrate the availability of suitable employment to establish its affirmative defense,'" id. at 4 (citing Dec. 10, 2024 Mem. Op. at 19), but that the Court was hesitant to follow Madison Courier "because 'the[C]ircuit has not conclusively ruled that such proof is not required, especially after the passage of the Civil Rights Act[,]" id. (citing Dec. 10, 2024 Mem. Op. at 19–20).

The defendant claims that "the Supreme Court has noted that since the passage and amendment of Title VII in 1991 that Madison Courier articulated the operative principles of the mitigation defense for Title VII," id., and cites Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 849 (2001), as support for its position. The defendant further states that "the Supreme Court has endorsed Madison Courier's discussion of an employee's duty to mitigate in a Title VII case[,]" id. at 5 (citing Ford Motor Co. v. Employment Opportunity Comm'n., 458 U.S. 219,

231 n.16 (1982)), and that "at least two judges in this district have explicitly applied Madison Courier's back pay analysis to Title VII cases[,]" id. at 7 (citing Conn v. Am. Nat'l Red Cross, 149 F. Supp. 3d 136, 152 (D.D.C. 2016); Fogg v. Gonzales, 407 F. Supp. 2d 79, 90 (D.D.C. 2005), aff'd in part, rev'd in part on other grounds, 492 F.3d 447 79, 94 (D.C. Cir. 2007)). The defendant also alleges that the Court's reliance on Coulibaly v. Pompeo was misplaced because there the court held that the District of Columbia Circuit has "endorsed" the exception "that if a defendant can prove that a plaintiff did not make a reasonable or good faith effort to seek employment, then the defendant is relieved of the burden of establishing that suitable alternative employment opportunities existed." Id. at 8–9 (citing Coulibaly v. Pompeo, No. 14-cv-0712 (CRC), 2020 WL 1536185, at *7 n.4 (D.D.C. Mar. 31, 2020) (citing Madison Courier, 472 F. 2d at 1319)).

However, in its December 10, 2024 Memorandum Opinion, the Court acknowledged the authority which the defendant contends conflicts with its decision requiring the defendant to demonstrate whether other suitable employment was in fact available to the plaintiff. Dec. 10, 2024 Mem. Op. at 18–19. And, the Court took into consideration many of the same cases that the defendant cites in its motion. See id. at 19 ("'And the D.C. Circuit seems to have endorsed this exception' [] to the standard rule that the defendant must prove the availability of suitable employment.") (citing Coulibaly, 2020 WL 1536185 at *7; Madison Courier, 472 F.2d at 1319; Conn, 149 F. Supp. 3d at 152); id. ("[T]he Supreme Court has counseled that § 10(c), which was passed 'prior to enactment of the Civil Rights Act of 1964,' 'gives [] guidance as to the proper meaning of the same language in § 706(g) [42 U.S.C. § 2000e-5(g)] of Title VII.'") (citing Pollard, 532 U.S. at 849) (alterations in the original). Thus, the defendant does not present any new arguments as to why the Court's conclusion was wrong, but instead uses its motion "as a

vehicle for rearguing the merits of their position where [it] failed to do so adequately in the first place." Estate of Gaither ex rel. Gaither, 771 F. Supp. 2d at 12.

At bottom, none of the cases cited in the defendant's motion or subsequent briefing in support of its position clearly establishes why the Court's ruling that the defendant was required to demonstrate the availability of suitable employment for the plaintiff absent "an express directive by the [District of Columbia] Circuit or the Supreme Court [,]" Dec. 10, 2024 Mem. Op. at 19–20, was in error. The defendant argues that "this Court is bound by Madison Courier [,]" Def.'s Mot. at 9, but the Court already explained why it did not feel compelled to construe Madison Courier as creating an absolute bar to a Title VII plaintiff's claim to back pay as it concluded in its previous Memorandum Opinion, Dec. 10, 2024 Mem. Op. at 19–20.

While the additional cases cited by the defendant discuss generally a Title VII plaintiff's duty to mitigate her damages, they do not specifically compel this Court to abandon its approach in requiring the defendant to demonstrate the availability of suitable employment for the plaintiff. See Ford Motor Co., 458 U.S. at 231–232 ("An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in § 706(g). This duty . . . requires the claimant to use reasonable diligence in finding other suitable employment"); Berger v. Iron Workers Reinformed Rodmen, 170 F. 3d 1111, 1133 (D.C. Cir. 1999) (holding that there is "a statutory duty to minimize damages on the part of Title VII claimants, which requires them to use reasonable diligence in finding other suitable employment") (internal citation and quotation marks omitted).

None of the cases cited by the defendant provide binding precedent that requires this Court to accept the defendant's reading of Madison Courier that a defendant in a Title VII case "does not have to demonstrate the availability of suitable employment to establish its affirmative

defense[]" in a case with facts like this case. December 10, 2024 Mem. Op. at 19. To be sure, other courts in this Circuit have come to the opposite conclusion and have applied Madison Courier as an absolute bar to Title VII claimant's ability to obtain back pay, see e.g., Conn, 149 F. Supp. 3d at 152. However, this is a factor that the Court already considered in its previous Memorandum Opinion, December 10, 2024 Mem. Op. at 19.[3]

Further, the Court notes, as the plaintiff has in her combined motion, Memorandum in Support of Pl.'s Com. Mot. at 24, ECF No. 140-1, the Circuit affirmed the district court's decision in Barbour v. Medlantic Mgmt. Corp., which held in a Title VII case that the defendant "must demonstrate that substantially equivalent positions were available and that the plaintiff failed to use reasonable diligence to obtain such positions[,]" 952 F. Supp. 857, 864 (D.D.C. 1997) (emphasis added). And while the Circuit's Order affirming the district court's decision was unpublished and therefore is not precedential, see D.C. Cir. Rule 32.1(b)(1)(A) ("Unpublished orders or judgments of this court, including explanatory memoranda and sealed dispositions, entered before January 1, 2002, are not to be cited as precedent"), the Court notes that the Circuit's per curiam Order affirming the district court's decision in Barbour came twenty five years after the Circuit's decision in Madison Courier, Barbour v. Merrill, No. 97-cv-7044, 1997 WL 702331 at *1 (D.C. Cir. Oct. 9, 1997) (per curiam); Madison Courier, 472 F.2d at 1307. Additionally, just this year, another court in this District agreed with this Court's conclusion in holding that "[an] employer can prove that a claimant failed to mitigate damages by establishing: (1) the claimant did not make reasonably diligent efforts to find other suitable

[3] Further, the Court in its earlier Opinion found that the plaintiff did take "some efforts to secure comparable employment." Dec. 10, 2024 Mem. Op. at 15 (emphasis in the original). For example, the Court noted that the plaintiff tried to find employment "[through] constant job searches online, networking, starting an independent video business, and attending conferences[,]" she sought recommendations from "four former colleagues and friends[,]" and followed up with job applications for television production jobs and other related jobs. Id. (Alavi Decl. ¶ ¶ 15, 16, 17–18).

employment and (2) other suitable employment was, in fact, available." Thompson v. District of Columbia, No. 97-cv-1015 (RJL), 2026 WL 2283072, at *3 (D.D.C. Aug. 7, 2026) (internal citations and quotation marks omitted) (emphasis added).

As stated by the Circuit "'[C]ourts must be careful when applying' the mitigation doctrine and [] it would not be unreasonable to resolve doubts in this area in favor of the innocent discriminatee." Berger, 170 F.3d at 1134 (citing Madison Courier, 472 F.2d at 1321) (cleaned up). This is the approach the Court took in its December 10, 2024 Memorandum Opinion, considering the fact that the plaintiff did at least take some efforts to secure employment following her unlawful termination, and the defendant has failed to demonstrate why the Court's conclusion was in error in such circumstances. Accordingly, the defendant's motion for partial reconsideration must be denied.[4]

**b. Plaintiff's Request for Back Pay**

**i. The Defendant's Federal Rule of Civil Procedure 26(a)(2) Challenge**

The Court now turns to the question of what amount of back pay the plaintiff should receive. First, however, the Court will address the defendant's argument that the plaintiff "has not carried her burden of establishing 'the value of [her] lost salary and benefits.'" Def.'s Opp'n at 11 (quoting Barbour v. Merrill, 48 F.3d 1270, 1278 (D.C. Cir. 1995)). The plaintiff retained an expert, Mr. Jeffrey D. Barsky, CPA, to calculate her lost salary and benefits and attached Mr. Barsky's report to her combined motion. See Declaration of Jeffrey D. Barsky ("Updated Barsky Report"), ECF No. 140-2. The defendant argues that the "[p]laintiff may not rely on her new, previously undisclosed expert report[,]" id., because it "was not disclosed to the Agency

[4] The defendant also argues that the Court should not have required the defendant to show the availability of suitable employment for the plaintiff because the duty to mitigate is found in "tort and contract law principles[,]" Def.'s Mot. at 6, and because it is "the prevailing view among the circuits[,] id. at 7 (collecting cases). However, the Court does not find either of these arguments sufficiently persuasive to warrant rejection of its earlier ruling.

prior to its submission to the Court[,]" Def.'s Opp'n at 9 (citing Fed. R. Civ. P. 26(a)(2)). The defendant contends that this failure "cannot be harmless, where, as here, the [defendant] has had no opportunity to scrutinize the factual assertions or otherwise develop the record for any calculations over the past decade such that would permit the Agency to 'challenge the award's amount.'" Id. at 10 (citing Barbour, 48 F.3d at 1279-80; Hopkins v. Price Waterhouse, 737 F. Supp. 1202, 1216 (D.D.C. 1990)). Moreover, the defendant argues that "[t]he report may not be considered a supplement of [the p]laintiff's prior report . . . because this report addresses new matters 'after discovery has ended.'" Id. (quoting Iacangelo v. Georgetown Univ., 272 F.R.D. 233, 234 (D.D.C. 2011).

Additionally, the defendant contends that the Updated Barsky Report "makes numerous factual assertions for which [the p]laintiff has provided no documentary or other evidentiary support[,]" in addition to failing to include the "the witness's qualifications, the required list of cases in which the witness testified as an expert at trial or by deposition, or a statement of the compensation to be paid for the study and testimony in the case." Id. at 10–11 (quoting Fed. R. Civ. P. 26(a)(2)(ii), (iii)) (internal quotation marks omitted). Therefore, according to the defendant, the Court should not allow the plaintiff "to use that information . . . unless the failure was substantially justified or is harmless . . . and [it] must be stricken from the record." Id. (citing Fed. R. Civ. P. 37(c)(1)) (internal quotation marks omitted); Tarquinii v. Del Toro, No. 21-cv-1567 (RC), 2024 WL 4298857, at *19 (D.D.C. Sep. 26, 2024)).

The plaintiff responds by arguing that Federal Rule of Civil Procedure 26(a)(2) "deals with pretrial disclosures[,]" Pl.'s Reply at 6, and that "[t]he cases noted in the Opposition all relate to pretrial proceedings[,]" id. at n.2. The plaintiff also argues that "the parties exchanged competing expert reports on back pay relief in September 2020 . . . without any reference to Rule

26 by [the d]efendant or the Court[,]" id. at 7, and notes that the Updated Barsky Report "is expressly an update of the same report [the p]laintiff filed in September 2020 using the same methodology with the two clarifications mandated by the Memorandum Opinion and the Order relating to bonus pay and weekend pay[,]" id. Finally, the plaintiff challenges the defendant's assertion that the Updated Barsky Report "fail[ed] to document the basis for [the p]laintiff's income and file Mr. Barsky's resume." Id. at 8.

As an initial matter, the plain language of Rule 26(a)(2) states that the rule applies only to a "witness [a party] may use at trial." Fed. R. Civ. P. 26(a)(2)(A). Other courts in this district have adhered to this construction of the Rule. See Moore v. Napolitano, 926 F. Supp. 2d 8, 35 n.12 (D.D.C. 2013) ("The plain language of Rule 26(a)(2) limits the rule to experts who may testify at trial."); Lewis v. Booz-Allen & Hamilton, Inc., 150 F. Supp. 2d 81, 92 (holding that Fed. R. Civ. P. 26(a)(2)(A) did not apply to an expert's affidavit because "[it] was provided in support of a motion in limine and not as a discovery item in preparation for trial").

Even assuming arguendo that Rule 26(a)(2) did apply, the plaintiff's alleged failure to disclose the Updated Barsky Report was "harmless" to the defendant. Tarquinii, 2024 WL 4298857 at *19 (citing Fed. R. Civ. P. 37(c)(1)). The plaintiff submitted the Initial Barsky Report with her Motion for Award of Equitable Relief in 2020. Report of Jeffrey D. Barsky, ECF No. 110-2. In fact, in the defendant's motion opposing the plaintiff's Motion for Award of Equitable Relief, the defendant's own economic expert extensively reviewed and critiqued the Initial Barsky Report. See Report of Dr. Laura A. Malowane at 9–12, ECF No. 112-2. The Updated Barsky Report "use[s] the very same methodology" as the Initial Barsky Report, and accordingly the defendant cannot credibly argue that it was prejudiced by the plaintiff's alleged failure to properly disclose the Updated Barsky Report, when it had notice of the substantially

identical predecessor report and had failed to note its opposition in any respect to the Initial Barsky Report. Pl.'s Reply at 7. Further as indicated above, the defendant's expert already extensively challenged the Initial Barsky Report, which utilized the same methodology used in the Updated Barsky Report.

**ii. Amount of Back Pay the Plaintiff Is Entitled to Receive**

"[C]alculating lost pay in a case like this necessarily involves some amount of estimation, precisely because it is not possible to reconstruct with perfect accuracy the events that would have occurred but for the defendant's unlawful conduct[.]" Caudle v. District of Columbia, 825 F. Supp. 2d 73, 78 (D.D.C. 2011); see also Pittington v. Great Smoky Mountain Lumberjack Feud, LLC, 880 F.3d 791, 799 (6th Cir. 2018) ("Back[] pay should be awarded even where the precise amount of the award cannot be determined." (internal quotation marks omitted) (quoting Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 628 (6th Cir. 1983))); Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1343 (11th Cir. 2005) ("'[U]nrealistic exactitude is not required' as the back[]pay calculation may be based on 'just and reasonable inference' of the missing or imprecise figure." (alteration in original) (quoting Pettway v. Am. Cast Iron Pipe Co., 494 F.2d 211, 260 (5th Cir. 1974))); cf. Barbour, 48 F.3d at 1280 ("[A] district court should not refuse to award front pay merely because some speculation about future earnings is necessary.").

In an Order issued after a motion hearing in 2020, the Court granted the plaintiff's motion for miscellaneous relief to the extent that it:

> (1) [sought] to calculate weekend pay at the rate set forth in the plaintiff's motion, should the Court ultimately determine the plaintiff is entitled to weekend pay;[5] (2)

[5] The Court in its December 10, 2024 Memorandum Opinion held that "the parties' proposed reduced back pay awards must account for the Court's prior determination that (1) weekend pay must be calculated 'at the rate set forth in the plaintiff's motion.'" Dec. 10. 2024 Mem. Op. at 21 n.6. In the relevant motion, the plaintiff states "[t]he Persian service office worked on schedules geared to the time and calendar of Iran and its environs where the work week goes from Saturday to Thursday and with special time demands during holidays . . . Ms. Alavi usually worked

> [sought] a finding that the plaintiff is entitled to bonus pay per year at a rate equal to the minimum amount received by her cohorts, should the Court ultimately determine the plaintiff is entitled to back pay; (3) [sought] a finding that the plaintiff is entitled to attorney's fees and costs at a rate to be determined by the Court at a later date; and (4) [sought] a finding that the plaintiff is entitled to fringe benefits.

Order at (Jan. 7, 2021), ECF No. 114. In its December 10, 2024 Memorandum Opinion, the Court further stated that it did "not have sufficient information to independently calculate the back pay award the plaintiff is entitled to receive" and thus held in abeyance that component of the plaintiff's motion. Dec. 10, 2024 Mem. Op. at 21.

The plaintiff argues that the "standard methodology for calculation of back pay is calculation of the total pay for the grade and step of the position illegally deprived, deducting the interim earnings on a weekly basis and totaling the appropriate periodic interest in accordance with the Office of Personnel Management published rates." Memorandum in Support of Pl.'s Com. Mot. at 7, ECF N0. 140-1 (citing Jean-Baptiste v. District of Columbia, 958 F. Supp. 2d 37, 42 (D.D.C. 2013). According to the Updated Barsky Report, the plaintiff is entitled to $2,055,767 in back pay, in addition to an additional award of $1,271,096 in interest for a total award of $3,326,863. Id. at 8. Mr. Barsky came to this amount by using

> [the p]laintiff's annual income, the published schedules for the grade and step for [the p]laintiff from April 2007 to December 2026 for the Washington area, the premium pay at the rate of 13.8052 percent as evidenced by [the plaintiff's] September 2006 pay summary . . . [,] the minimal annual bonus accruals and the published OPM back pay quarterly interest rates."

Id.

The defendant proposes a vastly different figure. According to the defendant, "the Court should not award more than the salary [the p]laintiff would have received from April 2007 (when she was terminated) through December 2007, around the time she voluntarily left a job at Fox

---

one weekend assignment per week." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Award of Equitable Relief at 16, ECF 108-1.

Television, or $50,076." Def.'s Opp'n at 11–12. The defendant argues that this figure is appropriate because back pay "may be cut short if a plaintiff fails to properly mitigates damages[,]" id. (quoting Jean-Baptiste, 958 F. Supp. 2d at 46), and because "back pay is not available for a period after an individual voluntarily resigns where the 'quit is motivated by personal reasons unrelated to the job or as a matter of personal convenience[,]" id. (quoting Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1278 (4th Cir. 1985)).

The Court has issues with both parties' proposed methods for calculating the back pay the plaintiff should be awarded. First, the plaintiff's proposed calculation again does not "provide a contrary model or approach for the Court to consider in determining what the offset back pay award should be." Dec. 10, 2024 Mem. Op. at 20–21. In its prior Memorandum Opinion, the Court noted the defendant's argument "that a back pay award should be offset by . . . the possibility of no employment." Id. at 20 (internal citations and quotation marks omitted). And, as indicated above, the plaintiff has failed to provide a determination as to "what the offset [of] the back pay award should be." Id. at 20–21. As for the defendant's current calculation, it runs contrary to the Court's December 10, 2024 Memorandum Opinion for multiple reasons, including the termination of the plaintiff's back pay after she left her job at Fox Television in 2007 and not taking into account the fringe benefits, bonus pay, and weekend pay the plaintiff would have received as ordered by this Court. See generally Def.'s Opp'n at 11–13.

To hopefully bring closure to this long running case, the Court in exercising its "discretion to award equitable relief[,]" Jean-Baptiste, 958 F. Supp. 2d at 40, makes the following rulings as to how the plaintiff's back pay award should be calculated. The plaintiff is entitled to receive back pay from the date of her unlawful termination in April of 2007 until the date of her pending reinstatement on November 2, 2026 as previously ordered by the Court on

September 16, 2026, but only for the periods of time in which the record reflects that the plaintiff was actively employed. Order at 1 (Sept. 16, 2026), ECF No. 151. The Court will not award the plaintiff back pay for the entire periods of time when she was unemployed, because as the Court has previously found, the plaintiff '"failed to take reasonable steps to mitigate' her damages during the time for which she seeks back pay." Dec. 10, 2024 Mem. Op. at 18 (quoting Price Waterhouse, 737 F. Supp. at 1215). But this ruling was only partially conveyed correctly, as what the Court intended to convey was that the plaintiff did not make reasonable efforts to obtain other employment during the entire period when she was unemployed. Thus, the defendant's liability is tolled from the date of her unlawful termination in April of 2007, with the exception of the two months that the plaintiff worked at Fox News until she "decided to leave[,]" Declaration of Banafshé Alavi Ex. 1("Alavi Decl.") ¶ 23, ECF No. 108-3, until 2010 when she began her video production company and again from 2015 when she decided "that the independent video/TV production business would not be built up sufficiently to make it worthwhile[,] id. ¶ 24, until February 2016, when the plaintiff commenced her employment with a bank.

This strikes the Court as the proper balance between ensuring that "a victim of employment discrimination [receives] the most complete make-whole relief possible[,]" Barbour 48 F.3d at 1270, while at the same time not making it "unfair to saddle the defendant[] with the costs associated with [the plaintiff's] unreasonable [employment] decision[s][,]" Barbour 952 F. Supp. 857 at 864. See also Brady, 753 F.2d at 1279 ("To hold that employers are liable for losses incurred due to a claimant's unjustified, voluntary termination of interim employment renders the back pay obligation punitive, and abuses the intent of the remedy"); Equal Employment Opportunity Comm'n v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992)

("Accordingly, the district court properly tolled the back pay award during the period between each voluntary quit and her next full-time permanent position.").

While the Court in its December 10, 2024 Memorandum Opinion held that the defendant "failed to establish its affirmative defense that the plaintiff failed to mitigate her post-employment damages[,]" Dec. 10, 2024 Mem. Op. at 20, this determination merely addressed whether the plaintiff was entitled to any back pay and not the amount of back pay she is entitled to receive, see Barbour 952 F. Supp. 857 at 864 (holding that the plaintiff was entitled to front pay even though the plaintiff's job search was "minimally acceptable[,]" but deducting from the plaintiff's award the amount that resulted from the plaintiff "voluntarily quitting suitable employment for personal reasons."). The Court finds that tolling the defendant's liability for back pay for the time when the plaintiff was unemployed strikes the correct balance between the Court's finding that she "made some efforts to secure comparable employment[,]" while on the other hand taking into account the defendant's "failure to establish that other suitable employment, was in fact, available." Dec. 10, 2024 Mem. Op. at 15, 20 (emphasis in the original).

Therefore, the Court awards the plaintiff back pay from the date of her termination in April of 2007 until November 2, 2026, the date by which the defendant is required to reinstate the plaintiff, Order at 2 (Sept. 17, 2026), ECF No. 151, with the defendant's liability tolled for the periods of time when the plaintiff was not earning income from 2007 until 2010 and 2015–January of 2016 due to her failure to consistently exercise reasonable efforts to find other suitable employment.[6] For the remaining periods, the plaintiff will be awarded back pay at the

[6] For example, during the time between 2007 and 2010 the plaintiff provides sparse details as to what efforts she took to find other suitable employment other than her conclusory statement that "2008 and 2009 were the economic meltdown years and there were no jobs[,]" and the plaintiff also does not provide any explanation as to the efforts she took in 2015 to find other suitable employment. Alavi Decl. ¶ 26.

grade and step levels she presumably would have achieved but for her unlawful termination, with deductions for her interim earnings as required by statute, 42 U.S.C. ¶ 2000e-5(g)(1), along with prejudgment interest as specified in 5 U.S.C. § 5596(b)(2) and 26 U.S.C. § 6621(a)(1). Consistent with this Court's earlier ruling, the back pay award must account for the Court's prior determination that (1) weekend pay must be calculated "at the rate set forth in the plaintiff's motion[;]" and (2) the plaintiff "is entitled to bonus pay per year at a rate equal to the minimum amount received by her cohorts[,]" although again tolled for the periods of time when the plaintiff was not earning income. Dec. 10, 2024 Mem Op. at 21 n.6 (citing Order at 1 (Jan. 7, 2021), ECF No. 114).

Also consistent with the Court's January 2021 Order, the plaintiff's fringe benefits, which include her annual paid leave, as well as her basic federal annuity, are awarded to the plaintiff, subject to the tolling periods identified above. Finally, the Court rejects the plaintiff's request for Thrift Savings Plan deposits because the Court finds this request to be unduly speculative, "[as] the court refuses to guess" that the plaintiff would have actually contributed to the plan. Fogg, 407 F. Supp. 79 at 91. Finally, because the Court's rulings differ from the Updated Barsky Report calculation, the Court orders that the plaintiff submit a revised calculation detailing the estimated amount of back pay she should receive consistent with this Memorandum Opinion within thirty days after the issuance of the Order accompanying this Memorandum Opinion. This shall be provided in a joint status report if the defendant agrees with the calculation proposed by the plaintiff if the proposed amount is compliant with the Court's rulings. However,

if the parties do not agree to an amount as calculated by the plaintiff, then they shall file separate status reports with the Court, along with explanations for why their positions diverge.[7]

## IV. Conclusion

For the foregoing reasons, the Court concludes that it must deny the defendant's Motion for Partial Reconsideration, ECF No. 127, and grant in part and deny in part the plaintiff's Combined Motion for Additional Relief and Opposition to the Defendant's Motion for Partial Reconsideration, ECF No. 140.

**SO ORDERED** this 7th day of October, 2026.[8]

REGGIE B. WALTON
United States District Judge

[7] This requirement is not intended to suggest that the parties are waiving any of their positions that differ with the rulings made by this Court.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.